* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Gregory and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to receive additional evidence and to reconsider the evidence in this matter. Having received additional evidence and reconsidered all the evidence of record, the Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. As of August 9, 2001, an employer/employee relationship existed between the plaintiff-employee and defendant-employer.
3. Defendant is a qualified self-insurer and administers its own claims.
4. Plaintiff's average weekly wage on August 9, 2001 was $656.40, which yields a compensation rate of $437.62.
5. Plaintiff alleges that on August 9, 2001, he sustained a compensable injury by accident to his left thumb, left hand, and left arm. Defendant alleges that plaintiff did not suffer any disability as a result of the injury and that he has been paid all benefits to which he is entitled.
6. Plaintiff suffered no loss of earnings during the period August 9, 2001, through November 14, 2001. Plaintiff last worked for defendant on November 14, 2001. On November 15, 2001, the employer closed its manufacturing operations at its Rural Hall, North Carolina plant, and plaintiff was laid off.
7. Plaintiff received one week of severance pay (in the amount of $656.40) covering the period from November 15, 2001, through November 22, 2001. Plaintiff was then paid accrued vacation pay through on or about December 16, 2001. Effective December 17, 2001, plaintiff began receiving $394.00 per week in unemployment compensation benefits, which he continued to receive for several weeks thereafter.
8. The parties have agreed that plaintiff's medical records and physical therapy records are authentic and may be received into evidence without further identification. The parties further stipulate that unless testimony to the contrary is presented, each doctor or healthcare provider would testify in accordance with the contents of the medical report or reports prepared by him/her or under his/her supervision. This stipulation is not an admission by any party of the truth of the contents of said reports, but only that the doctors or medical providers would testify under oath in accordance with the contents of those reports. This stipulation is without prejudice to the right of counsel for either party to take additional medical testimony and is without prejudice to the right of opposing counsel to object thereto.
9. The parties agree that the following Industrial Commission forms and pleadings are genuine and may be received into the record for the purpose of establishing the procedural history of this case (Stipulated Ex. 3, consisting of 18 pages):
(a) I.C. Form 18;
(b) I.C. Form 33;
(c) I.C. Form 33R;
 (d) Plaintiff's motion to compel defendant to pay for medical tests (8/9/02);
 (e) Plaintiff's motion to approve Dr. Poehling to assume care (8/12/02);
(f) Defendant's motion for extension of time;
(g) Order granting extension;
 (h) Defendant's response to plaintiff's motion to pay for tests; and
 (i) Order by Deputy Commissioner Adrian Phillips (9/11/02).
10. On or about December 5, 2001, Mr. Walden notified the Commission of his representation of plaintiff. On or about January 14, 2002, Ms. Jackson notified the Commission of her representation of defendant.
11. Plaintiff's medical records, consisting of 51 pages, were stipulated into evidence as Stipulated Ex. 1 (arranged chronologically) and Stipulated Ex. 4 (arranged by provider).
12. Plaintiff's physical therapy records, consisting of 31 pages, were stipulated into evidence as Stipulated Ex. 2.
13. In January 2003, upon defendant's motion, 27 pages of plaintiff's medical records for the period April 1997 through December 2001 were admitted into evidence.
14. In early July 2004, plaintiff's additional medical records for the period November 14, 2002, through June 23, 2004, were received into evidence (42 pages), along with plaintiff's job search records for the period November 21, 2002, through March 28, 2003 (14 pages).
15. In late October 2004, the additional October 13, 2004, deposition of Dr. Poehling was received into evidence.
16. On December 17, 2004, the November 17, 2004, N.C. Gen. Stat. § 97-27(a) evaluation report by Dr. Kuzma was received into evidence as Stipulated Ex. 5.
17. The issues are (i) on August 9, 2001, whether plaintiff sustained a compensable injury by accident to his left thumb, left wrist, and/or left arm; (ii) if so, to what disability and medical compensation benefits, if any, plaintiff is entitled to be awarded; and (iii) whether defendant is entitled to receive a credit for unemployment compensation benefits paid to the plaintiff.
 * * * * * * * * * * * EVIDENTIARY RULINGS
The objections raised by the parties in the depositions of Gary G. Poehling, M.D., Charles V. Taft, M.D., and Gary L. Sigmon, Ed.D., are OVERRULED.
 * * * * * * * * * * *
Based upon all the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 59 years old (date of birth: January 2, 1943) and had a high school education. He is married with two adult children. Plaintiff is right hand dominant.
2. In the period 1961 through 1964, plaintiff served in the United States Air Force, where he was a communication center specialist and used various printing machines, typewriters, and mailing equipment.
3. Plaintiff had a continuous work history from 1964 through November 14, 2001, primarily as a printing press operator; he worked in 1972-73 as a finish carpenter.
4. In the twenty-two year period from June 4, 1979, through August 8, 2001, plaintiff worked for defendant primarily as a pressman at defendant's plant in Rural Hall, N.C. Plaintiff also occasionally performed some carpentry work and operated a forklift for the defendant.
5. Plaintiff's normal and usual duties as a press operator required constant standing and walking and frequent use of both hands to operate large printing presses.
6. In the period prior to the events of August 9, 2001, plaintiff had no problem performing his full range of job duties for the defendant, and had no history of any problem with his left thumb, left hand, or left shoulder.
7. On the morning of August 9, 2001, plaintiff reported to work for the defendant. In order for the printing press to operate properly, it was necessary for plaintiff to remove or rewind the finished paper onto the press's rewind shaft. To start the rewind shaft, plaintiff bent over and used his left hand to grab the rewind shaft located about 20 inches off the floor and applied downward pressure on the shaft to take up any slack in the paper. He then used his right hand to turn on the power to the rewind shaft. When he turned on the power, the rewind shaft turned in the opposite or reverse direction than expected, and the rewind shaft forcefully pulled, twisted, and jerked plaintiffs left thumb, left hand, and left shoulder away from his body and pulled plaintiff into the press. Plaintiff immediately reported his injuries to his supervisor, who took him that morning to PrimeCare Occupational Medicine for medical evaluation and treatment.
8. In the period August 9, 2001, through October 4, 2001, plaintiff was treated for left thumb, hand, and arm pain by physician's assistants at PrimeCare. He also received physical therapy treatments. During this period, plaintiff was limited to occasional or no use of his left hand to perform work activities for the defendant, which modified plaintiff's normal duties to meet his medical limitations.
9. Plaintiff was unable to perform the required normal work duties of a pressman and a forklift operator for the defendant due to his August 9 injuries during the period August 9, 2001, through November 14, 2001, when he last worked for the defendant, which closed its plant on that date and laid off its employees.
10. Plaintiff's injuries grew worse. In early October 2001, PrimeCare referred plaintiff to Winston-Salem orthopedist Charles Taft, who first evaluated plaintiff on October 11, 2001. Dr. Taft is not a hand specialist. Plaintiff complained of chronic pain in his left thumb, left wrist, left elbow, and left shoulder due to his August 9, 2001, accident. In December, left thumb x-rays showed osteoarthritis at plaintiff's carpometacarpal ("CMC") joint space.
11. During the period October 11, 2001, through April 24, 2002, Dr. Taft followed conservative treatment, which failed to improve plaintiff's condition. Dr. Taft's diagnosis was left thumb pain.
12. On April 15, 2002, physical therapist Lois Maple with Dr. Taft's office, and at Dr. Taft's request, evaluated plaintiff's ability to use his left hand to perform work duties. This evaluation revealed that plaintiff was limited to using his left hand as a gross assist to his dominant right hand, due to pain and weakness in his left hand and arm.
13. On April 24, 2002, Dr. Taft opined that plaintiff had reached maximum medical improvement from his injuries, with no medical limitations, and he released plaintiff from his care.
14. On June 24, 2002, at plaintiff's request, Wake Forest University Baptist Medical Center orthopedist and hand specialist Gary G. Poehling evaluated plaintiff. Dr. Poehling noted plaintiff's left hand to be swollen, painful, and extremely weak. Dr. Poehling opined, and the Full Commission finds as fact, that plaintiff had sustained a significant injury to his left hand and arm due to his accident on August 9, 2001, with a resulting chronic regional pain syndrome of his left arm. Dr. Poehling prescribed a bone scan and an MRI of plaintiff's left wrist to help determine the exact nature of his hand injury.
16. A November 1, 2002, bone scan was abnormal, showing an inflamed or extremely hot area at the base of plaintiff's CMC joint, at the base of his left thumb.
17. On November 13, 2002, Dr. Taft saw plaintiff again at defendant's request and reviewed Dr. Poehling's evaluation notes and the bone scan. At that time, Dr. Taft wrote that in his opinion plaintiff had reached maximum medical improvement with a 25 percent permanent impairment to his left thumb.
18. Dr. Poehling prescribed a December 14, 2002, CT scan of plaintiff's left wrist, which revealed that plaintiff suffered from severe arthritis at the first CMC joint of his left wrist.
19. On December 23, 2002, Dr. Poehling reviewed the tests and examined plaintiff. Dr. Poehling diagnosed and the Full Commission finds that plaintiff is also suffering from severe carpal metacarpal arthritis of his left CMC joint. Plaintiff's accident on August 9, 2001, aggravated and made symptomatic plaintiff's preexisting dormant osteoarthritic condition of his left thumb.
20. Plaintiff suffers from the following symptoms due to his injuries of August 9, 2001: (a) moderate to severe left hand or wrist pain made worse with use; (b) nocturnal awakenings due to left hand and arm pain; (c) left hand and left thumb weakness; (d) difficulty using his left hand to handle small objects; (e) moderate difficulty with activities of daily living due to left hand pain and weakness; (f) left shoulder and arm pain made worse with use.
21. On April 13, 2004, Dr. Poehling operated on plaintiff's left thumb, a carpometacarpal fusion using Acutak screw procedure. The surgery provided significant pain relief at plaintiff's CMC joint. By July 22, 2004, plaintiff reached maximum medical improvement concerning his left thumb and hand injuries of August 9, 2001. Plaintiff's left hand grip strength is diminished by about 60% due to his inability to squeeze with his left thumb. Plaintiff has significant loss of sensation in his left thumb. Plaintiff has suffered a 40% permanent partial loss to his left hand as a result of his August 9, 2001, injury by accident.
22. Plaintiff has pain and weakness in his left shoulder and left arm due to reflex neurodystrophy or chronic regional pain syndrome resulting from the August 9, 2001, injury by accident.
23. By or about July 22, 2004, plaintiff reached maximum medical improvement to his left shoulder and left arm from his August 9, 2001, injury by accident
24. During the period since August 9, 2001, through April 12, 2004, plaintiff was limited primarily to use of his dominant right hand to perform work activities with limited ability to use of his left hand primarily as a gross assist only to his right hand.
25. Plaintiff's pain complaints concerning his left hand, left arm, and left shoulder are genuine. The pain is moderate to severe in intensity and made worse with any activity.
26. Plaintiff retains a 7% permanent loss to his left arm as a result of his August 9, 2001, injury by accident.
27. Plaintiff is permanently unable to use his left upper extremity to perform overhead work activities, is limited to minimal gripping in an assisting hand, and is limited to 5 pounds maximum lifting. Plaintiff is able to use his dominant right hand to perform work activities but is permanently limited to using his left hand as a gross assist only to his right hand such as using his left hand to hold an object down.
28. During the period of December 12, 2001, through May 28, 2003, plaintiff made a diligent but unsuccessful effort to find employment suitable to his limited work capacities, that is, suitable to use of his right hand with limited ability to use his left hand.
29. On the morning of August 9, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer when a printing press's rewind shaft unexpectedly operated in a reverse direction, injuring plaintiffs left thumb, left hand, left shoulder, and left arm.
30. Beginning November 15, 2001, and thereafter, plaintiff has been unable to earn the wages he was earning at the time of his injury in the same or any other employment due to his accidental injuries of August 9, 2001.
31. Plaintiff's motion for Commission approval of Dr. Gary Poehling to assume plaintiff's medical care and treatment resulting from his injuries of August 9, 2001, to his left thumb, left hand, and left arm is granted.
32. Defendant treated plaintiff's serious injuries of August 9, 2001, as if the injuries were minor. Defendant took the position that plaintiff suffered no impairment of wage earning capacity due to his August 9, 2001, injuries when the evidence shows to the contrary. Defendant also took the position that plaintiff did not need additional medical treatment when the evidence shows to the contrary. In many respects, defendant treated plaintiffs claim as if it were a denied claim. Plaintiff has been very diligent in his job search activities and in his efforts to overcome defendant's resistance to providing him with the medical care he needs. The Full Commission finds as contrary to fact defendant's position that plaintiff's inability to obtain employment is the same as it is for any of the other press operator laid off by WBF in November 2001 — the general economic downturn which struck WBF and the printing industry in general.
33. In our discretion we deny defendant any credit or deduction under N.C. Gen. Stat. § 97-42.1 from the award to plaintiff of total disability compensation benefits beginning December 14, 2001, for unemployment benefits paid to plaintiff in the period after that date. Defendant wrongfully denied compensation and medical compensation.
34. In light of plaintiff's advanced age, his high school education level, his work history primarily as a printing press operator, and his permanent limitation to work activities using his right hand primarily and his left hand as a gross assist, plaintiff is entitled to be paid permanent total disability and medical compensation for his injuries during his lifetime.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On August 9, 2001, plaintiff sustained an injury by accident to his left thumb, left hand, left arm, and left shoulder arising out of and in the course of his employment by defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's average weekly wage as of August 9, 2001, was $656.40, which yields a compensation rate of $437.62. N.C. Gen. Stat. § 97-2(5).
3. As a result of his compensable injury by accident, plaintiff is entitled to total disability compensation benefits for the period November 15, 2001, and continuing each week thereafter for plaintiff's lifetime. N.C. Gen. Stat. §§ 97-2(9) and 97-29.
4. Defendant shall pay all medical expenses relating to plaintiff's August 9, 2001, injury by accident as long as said treatment reasonably tends to effect a cure, give relief, or lessen the period of plaintiffs disability. N.C. Gen. Stat. §97-25.
5. Dr. Gary Poehling is approved as plaintiff's primary treating physician effective June 24, 2002. Defendant shall pay for all tests and treatment as prescribed for plaintiff by Dr. Poehling. N.C. Gen. Stat. § 97-25.
6. Defendant is not entitled to a deduction or credit from the total disability compensation benefits due plaintiff for the unemployment compensation benefits paid to him after December 17, 2001. N.C. Gen. Stat. § 97-42.
7. Plaintiff's primary care physician is approved to assume plaintiff's care for his injuries and to provide pain management treatment. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff total disability compensation benefits at the rate of $437.62 per week beginning November 15, 2001, and continuing each week thereafter for plaintiff's lifetime. This award is subject to an attorney's fee to plaintiffs counsel.
2. Defendant shall pay all medical expenses resulting from plaintiff's August 9, 2001, injuries by accident, including the left shoulder MRI and the left thumb fusion surgery as performed by Dr. Poehling, and any treatment for plaintiff's chronic regional pain syndrome of his left arm.
3. Defendant shall pay directly to plaintiff's counsel a reasonable attorney's fee of twenty-five percent (25%) of disability compensation awarded in paragraph 1 of this Award as follows: defendant shall deduct twenty-five percent of the lump sum due plaintiff and pay it directly to plaintiff's counsel. Thereafter, defendant shall send every fourth check directly to plaintiff's counsel.
4. Defendant shall pay all costs, including the previously approved expert witness fees, and shall pay interest under N.C. Gen. Stat. § 97-86.2.
5. The costs shall include a $2,000.00 reasonable attorney's fee to be paid to plaintiff's counsel by defendant pursuant to N.C. Gen. Stat. § 97-88. Defendant appealed and the Full Commission by this Opinion and Award orders compensation to be paid to plaintiff.
This 21st day of June 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_________________ PAMELA THORPE YOUNG COMMISSIONER